Good morning, Ms. Kelman. Good morning, Your Honor. You have five minutes. You can proceed whenever you're ready. Thank you. I practiced Kauapirura before I came in. I tried. I think I missed it, but I tried. I wrote it in big letters, phonetically. Good morning, Your Honors. We're here for two reasons, primarily. The first is the court's finding below that my client presented a risk of flight, and the second was that there was no substantial question. Can I just ask you, the government raised in its papers whether or not your client's still proceeding pro se, you're still just standby counsel? I am not standby counsel to question, Your Honor. I am not standby counsel. I am counsel of record for the appeal. I was standby counsel below. All right. All right. Go ahead. I'm sorry. No, that's fine. So with respect to the risk of flight, frankly, I find that astounding under the circumstances. My client has lived in Brooklyn for more than 30 years. She was married in Brooklyn in 1990. She and her husband bought a house as joint owners in 1999. She has worked for 30 years at the same job with promotions, but the same place of employment, which is Brooklyn Hospital. I don't know that I've gotten to represent someone that stable in my 40-plus years of practice. So to say that she has roots in Brooklyn and has never wandered from Brooklyn, she also has three adult children, two of whom live with her. Both are employed and reside with her at home. It seems to me you couldn't ask for somebody who is less likely to flee, in addition to which she is extremely disabled. She was hurt at work. She has difficulty ambulating. She walks with a cane, uses a wheelchair from time to time, and is in excruciating pain. Can I ask you, if we move to the substantial question part of it? First of all, it seems like the government did produce this impeachment material to the prior counsel before she proceeded pro se, and that you became aware of it during the deliberations. Correct. Is that accurate? So this is not a failure of the government to produce something. Well, yes and no, Your Honor. I think that it would be fair to say if it was produced in the discovery, I think one could make the argument. The court could make that argument. But, in fact, it was an email to prior counsel at a time when the plea was being negotiated. When the plea negotiations fell apart, there was no further conversation between the defendant who then became pro se. How is the government supposed to know that the prior counsel did not pass the email containing impeachment material to you and or to the client? Well, how difficult would it have been to mention it? The government doesn't automatically reproduce all material when new counsel comes in. Actually they do, Judge. I never take discovery from prior counsel. I always ask the government to make sure that I don't miss anything. That is my practice. It's always been my practice. No request, either the pro se, your client, or we want everything again. Right? There was no request to the government to produce everything. I requested that it be produced again. But then I wasn't counsel of record. I was standby counsel. And the court, the district court, made a very deliberate distinction between the two. I would, towards the end, when I wrote to the court, the court- All right, I don't want to get- Disregarded my- Can I just ask you then about why this witness who didn't testify, all right? Is a non-testifying witness. Why that was so crucial? Impeaching that witness was so crucial to the case. It appears, you can correct me if I'm wrong, that your client filed two tax returns saying she received over $300,000 that had been withheld. Which was a lie. The day after the visit to her home, she removes $52,000 from her bank account and puts it in her trust. And then when IRS agents show up in April 2001 inquiring about this, she submits a phony $1 million check. I think that's all unrelated to this non-testifying witness. So how would that have made a difference? Say anything about that witness and I'd understand how it made a difference in the trial. Your Honor, respectfully, the entire presentation by the government, or virtually the entire presentation by the government, was through this retired IRS agent who claimed to not know anything about the reasons for this prior agent's leaving. It was the prior agent who was in fact in charge of the investigation. She called all the shots in the investigation. She wrote all the reports on which their testifying witness relied. And at the end of the day- Let's say she had credibility problems. How would her credibility problems have affected anything I just referred to? All those things are completely independent of any witness, right? What your client did. Your client submitted a tax return that falsely claimed that they had withheld $365,000 in income. Somebody had to present that evidence to the court, Your Honor. And the person who was presenting it not only had no personal information about it, but was being encouraged, in my view, to misrepresent or mislead the district court by using an alias. I mean, there was an alias name. They used an alias to represent the person who was actually the field agent who was making all of these findings. It wasn't just the fact that there was a false tax return. Somebody had to prove that there was a false tax return. And the person who testified about it had no personal knowledge about it and was encouraged. In fact, I don't want to say- I don't understand that. If an agent retires or passes away, you're saying the IRS cannot prove that your client did not withhold $300,000? There's only one person in the world, that revenue officer, who was assigned to that case? Well, you can't effectively cross-examine someone who doesn't know anything about the case. And you can't effectively cross-examine someone who is representing something that they don't know to be the truth. But that's a separate question than this disclosure late in the game that you're concerned about. Right? That's just a general evidentiary question. I thought your focus was on the fact that there was this e-mail that didn't get properly conveyed. Well, of course, there is. And also the fact that they used an alias in the courtroom, which misled the court. And also the fact that the court was the investigating United States attorney in the Southern District of New York. Her rules are very clear that she had to be notified that there was a discrepancy. If the case, in any manner, shape, or form, touched on her involvement in the Southern District or in the Southern District generally. And there was no disclosure in the government's position that they didn't connect it until during deliberations. Because they had originally been in front of Judge Garifus. Well, they weren't in front of Judge Garifus for the six months between May and the time of the trial. When they had ample opportunity to realize that the district court was in fact the person who was prosecuting or was investigating, at least, the agent who was the field agent who made all the findings that this individual relied upon. Can I ask, and this may be sort of a repeat of my colleague. But I understand your position that the government effectively put his case in through this agent. It wasn't physically present, but it was her notes that put in the government's case. Are there statements from her notes that became part of the government's case that you contend are false or controvertible enough that her credibility problems would have cast doubt on the reliability of those statements? I think that's a fair question, Your Honor, but I think the answer is we can't know that. And we can't know that because she didn't testify. We know what this agent summarized her view to be. Sure, but in terms of your prejudice showing, you're not coming in, for example, and saying we know that this thing that she wrote down in her notes that her supervisor then read into the record was false. And that's not the nature of your claim, it's just we didn't get an opportunity to try to cast doubt on her statements by cross-examination. Well, there is an issue with respect to the findings that she made or the notes that she wrote as a result of the on-site visit that she made. And with respect to that on-site visit, she made certain findings that were certainly subject to cross-examination. And were those findings, did those go to an element of the charge? They did to the extent that they went to the amount of the tax fraud, as it were, and tax misrepresentations. But to me, there's an essential issue here where lying to the district court or misrepresenting to the district court ought to take priority over all of these issues because that's something you just don't do. And here the court was misled and the defense was misled. This pro se litigant was misled and they were deliberately misled by the government. And frankly, in 40 years of practice, I've never seen that. All right. Thank you, Ms. Kellner. Thank you. Okay, we'll hear from the government. Ms. Cook. Good morning, Your Honors. Hannah Cook for the United States. May it please the Court. Your Honors, there are a lot of factual issues that I want to get into, but I want to not lose sight of the forest for the trees here. This is a bail motion in which the district court found that the defendant presented a flight risk based on her continued use of fraud before various courts and her disrespect for the jurisdiction of the court and that the defendant had not presented a substantial issue because, as Judge Bianco was noting, the government turned over this evidence. The government turned over this evidence the same day. The government not only turned this over, the government flagged the relevance of this evidence. They said this is giglio. It's used for impeachment. Revenue officers with the IRS, they all use professional pseudonyms to avoid harassment. But the e-mail to defense counsel made clear, we want to connect the dots for you. This is about this witness. Can I ask, we heard a representation that standby counsel tried to get renewed disclosure, and I'm not entirely clear how that plays out in the record, but did the government receive any requests from standby counsel or was the government aware of any requests from standby counsel to renew the disclosures? Your Honor, there's not any information in the record about this. There are no affidavits from, for example, the defendant, who is, as the court noted, representing herself. My understanding, just informally, you know, without relying on the record, is that at one point, at a variety of points, standby counsel did make requests and that the government attorney provided, I believe, a link to some database and that when she specifically requested this document, the government e-mailed it to her the same day. I mean, I think literally from the courtroom from his phone. So all of this outside of the data is obviously outside of the record, but your sense outside of the record is, yeah, there was a request made and the government answered. Yes, I understand that this document may or may not have been in the Dropbox link because it, as it's clear, went to defense counsel via e-mail. It wasn't part of a, like, full discovery production because it was so important that they sent it immediately. But I think that's honestly neither here nor there, whether standby counsel received it or not, because as the court was referencing, standby counsel obviously now appellate counsel and full counsel, and we do not in any sense dispute Ms. Kelman's ability to represent defendant on appeals. My understanding is she's been appointed by this court. But below, when she was standby counsel, the relevant question is, did the government comply with its obligations by producing this evidence to the defense? And at the time, the defense was appointed counsel, and the government did. I think that's undisputed. The government sent this via e-mail. And indeed, in the record, the only evidence about whether or not defendant received this information is that when they conducted a phoretic colloquy, the second phoretic colloquy before Judge Gujarati, the judge asked, did you get the discovery from your prior counsel? And she said, yes, I got it. So at that point, to Judge Bianco's point, the government had no way of knowing. I mean, I still don't know whether or not defendant received this document. I believe that standby counsel may not have had an opportunity to review it, but that's neither here nor there. And the cases that we cited in our brief, including the Euchre case, which says that a defendant is actually not entitled to reproduction of Brady and Giglio once they choose to go pro se, but it also applied this court to United States v. Hayes, which is at 2016 Westlaw 3102222, which holds that, in fact, producing discovery such as Giglio and Brady to standby counsel is insufficient when a defendant is pro se because, of course, it's the defendant who is functionally the counsel of record. And so production to standby counsel actually doesn't meet the government's obligations. The government has to produce it to the defendant or to defense counsel. And that's what the government did here. We produced it to defense counsel. We got a confirmation on the record that she had received it. And that, to my mind, ends this case, or at least certainly this bail motion, because— Do you want to spend, just because your time is almost up—  —a minute on why it would not have affected the results of the trial either way? Absolutely. I think it went to exactly what you were talking about, Judge Bianco, which is this is mostly a papers case, to be honest with you. And most of the records proving what defendant did to what Your Honor was mentioning, the filing of the false tax returns, the moving of the money, these were things that were IRS records that were introduced, unobjected to, from an IRS records custodian. They had nothing to do with this revenue officer who made this one visit to defendant's house and did some early paperwork. Those were business records. Indeed, the transcript that Mr. Smith read from was a business record of the IRS. But even without that evidence, fundamentally, the false returns, the failure to file, the moving the money, the refusal to return even after the liens and levies are being garnished, which further substantiates the truth of the accuracy of the ICS transcript, all of those prove beyond a reasonable doubt, and really I think beyond any question, that defendant committed the crimes for which she was convicted by the jury. And I don't think any further impeachment of Mr. Smith would have made any difference. He was impeached. That's the end of it. Thank you very much. Thank you, Ms. Cook. Thank you, Ms. Kalman, who reserved the decision. Have a good day.